## PROSECUTION OF BANK OFFICER FOR EMBEZZLEMENT.

Circuit Court of Stark County.

IN RE APPLICATION OF CORWIN D. BACHTEL FOR A WRIT OF
HABEAS CORPUS. *

Decided, 1907.

*Constitutional Law—Section 3821-85, Relating to Embezzlement, etc.,
by Bank Officials—Habeas Corpus—Lies Against the Jurisdiction
of a Court, but not Against the Regularity of Its Order of Commit-
ment—Criminal Law—Error—Free Banking Act of March 21,
1851—Classification.*

1. While errors of the trial court can not be properly brought before
   a reviewing court by habeas corpus, a petitioner for a writ of
   habeas corpus who attacks the jurisdiction of the trial court will
   be heard.
2. Section 3821-85, providing a penalty for embezzlement, etc., by bank
   officers, employes and agents, is not unconstitutional because not
   of uniform operation.
3. But if it be true that one of the provisions of this act is unconsti-
   tutional, it follows that the corresponding section of the original
   free banking act, passed before the adoption of the present Con-
   stitution, is unrepealed and still a valid and constitutional act
   under the provisions of which an offender may be prosecuted.

DONAHUE, J.; TAGGART, J., and McCARTY, J., concur.

The petitioner, Corwin D. Bachtel, in his petition in habeas
corpus presented to the judges of this court claims that he is
unlawfully restrained of his liberty by the sheriff of Stark
county, Ohio, and prays an order discharging him from such im-
prisonment. It appears by the sheriff's return that the peti-
tioner was indicted by a grand jury of Stark county for a viola-
tion of Section 3821-85 of the Revised Statutes of Ohio, and in
default of bail was committed to the jail of said county until
trial could be had upon said indictment.

* Affirmed by the Supreme Court of Ohio without report; leave to file
  a petition in error in the United States Supreme Court refused.

The petitioner claims that the indictment is invalid and that the Court of Common Pleas of Stark County has no jurisdiction thereof,. for the reason that the section, under favor of which the state is attempting to prosecute the petitioner, is unconstitutional and void, because it is in violation of Sections 1 and 2 of Article I of the Bill of Rights, and of Section 26, Article II of the Constitution of Ohio, and of Section 1 of the Fourteenth Amendment to the Constitution of the United States.

It is contended by the state that this court ought not to entertain this petition in habeas corpus at this time, for the reason that it appears by the return of the sheriff that the prisoner is in the custody of the Common Pleas Court of Stark County in which court said criminal prosecution is pending; that he has already filed a demurrer to said indictment, raising the constitutionality of said sections, upon which demurrer that court has held adversely to his claim, and that he ought to be required to follow in the regular course and prosecute error to this court, when it would appear, if it should ever appear, that the holding of the common pleas court upon this demurrer was prejudicial to the rights of the petitioner. With this contention in the abstract we are in accord. We think this is the better practice, and one that ought to be insisted upon by all reviewing courts, for it is not the purpose of habeas corpus to bring before a reviewing court errors of the trial court. There is another plain and adequate remedy at law provided for that purpose. But when a petitioner files his petition in habeas corpus, averring that he is unlawfully restrained of his liberty and attacks the jurisdiction of the court issuing the warrant or order for his commitment, we think it is the policy of our law that the question of jurisdiction should be heard, although all questions of mere error or irregularity will not be heard upon such petition, but solely and alone the question of jurisdiction of the court issuing the writ or order of commitment.

In determining the question raised, then, upon this petition in habeas corpus, to-wit, the constitutionality of the act under which prosecution is brought, it is necessary to determine whether the language of the law itself raises any doubt as to its constitu-

tionality.   The three objections urged to the constitutionality of this act are kindred in their nature, and many of the reasons urged by the petitioner why it is in violation of Section 26 of Article II of the Constitution of Ohio are practically the same reasons urged by him as to why it is in violation of Sections 1 and 2 of Article I of the Bill of Rights, and also Section 1 of the Fourteenth Amendment to the Constitution of the United States.   In fact the questions raised here by counsel for the petitioner are comprised in the contention that the law is not of uniform operation throughout the state, and for that reason violates all of these constitutional provisions.

Turning first to the law itself we find this comprehensive language used:   "Every president, director, cashier, teller, clerk or agent of any banking company," etc.   It is insisted by petitioner that this language does not include many other individuals similarly situated in their business relations to the public, because the words "any banking company" can only refer to banks organized under what is known as the free banking act of this state, passed in 1851, and that such officers of all other banks are not amenable to this law, notwithstanding their occupation and duties are identical with the occupation and duties of the officers of such banks, and that by reason thereof the law is not uniform in its operation.   The presumption, of course, is that this law is constitutional, and it must clearly appear that it is not before a court is authorized to declare it unconstitutional.

In the case of *Slingluff et al* v. *Weaver et al*, 66 Ohio St., page 621, the Supreme Court say:

"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the law-making body, there is no occasion to resort to other means of interpretation.   The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact.   That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

If that doctrine is to be applied to the question here presented it is an end to this contention, for taking this section alone, without reference to its position in the chapter in which it is found and without reference to its history, it clearly appears that it comprises all banking companies in the state of Ohio, and, therefore, the objections urged by the petitioner do not obtain.

But upon the theory that each section of the law must be construed *in pari materia* with other sections applying to the same subject-matter, then it might fairly be said, in contemplation of the whole chapter, that there is a doubt appearing as to whether it includes all banking companies, or simply the banking companies organized under the free banking act, and, therefore, it may become necessary to investigate the history of this legislation for the purpose of determining to what character of banks the act does apply.

Coming, then, to these considerations, we find that on the 24th day of April, 1879, there was in force and effect what was then known as the free banking act, passed March 21, 1851, Section 30 of which was substantially in the language of Section 3821-85 of the Revised Statutes of Ohio, except as to the omission in the later act of various provisions of that section relating to putting in circulation notes and circulating bills of such banks provided for in this act; and upon said date the Legislature of Ohio passed an act entitled "An act further to amend the act entitled an act to authorize free banking, passed March 21, 1851 (49 Ohio Laws, 41), and the acts amendatory and supplementary thereto." And Section 6 of this amendatory act is an amendment of Section 30 of the original act and such amendment is now Section 3821-85 of the Revised Statutes of Ohio. Counsel, however, insist that these sections relating to the free banking act never became a part of the Revised Statutes of Ohio, and we use that term for convenience at this time, and for the further purpose of designating where they can be found conveniently, and not intending to determine whether they are a part of the Revised Statutes or not. They are at least part and parcel of the statute law of Ohio and as such we are now dealing with them.

To determine whether the phrase in the amended Section 30, "any banking company," applies to all banking companies of the state, or only banking companies organized under the free banking act, it is necessary to refer only to the title to this act, which distinctly avers that it is an act further to amend the act entitled an act to authorize free banking, passed March 21, 1851 (49 Ohio Laws, 41), and the acts amendatory and supplementary thereto; so that the conclusion necessarily follows that the Legislature at this time had not in contemplation any other kind or character of a banking institution except those contemplated in the act of March 21, 1851, and that nothing contained in this amendatory act was intended by the Legislature, or by any fair construction thereof, could be held to include any other banking company, except the ones provided for in the original act, including those in existence or any that might come into existence under the provisions thereof during the time that said act might remain the law of Ohio.

It appearing then that Section 6 of this amendatory act, which is now found under the sectional numbering 3821-85, must be held to include only banking companies organized under the provisions of the original act which this act amended, or sought to amend, the next question arises as to whether or not the classification therein attempted is imperfect, false or unnatural, and that such classification is resorted to by the Legislature for the purpose of giving a special law the appearance of a general law, to evade these constitutional limitations of the power of the Legislature.

The Supreme Court has repeatedly held that the Legislature has the power to classify, and that the legislative authority of this state is vested in the General Assembly in the broadest terms, by Section 1 of Article I of the Constitution, subject only to the limitations elsewhere found in the Constitution. It is, therefore, not within the province of any court to declare void, and annul, a statute by reason of a supposed violation of the principles of justice and common reason, if it be within the bounds of constitutional power. The courts have nothing whatever to do with the policy, the justice, or the wisdom of a statute so long

as it can not be said that it contravenes some constitutional provision.

Again our Supreme Court has said in the case of *Railway Company* v. *Horstman*, 72 Ohio St., 93, at page 107:

"We do not accept without qualification the postulate of the court below, that 'classification can not be made arbitrarily by the General Assembly by seizing upon any incident or characteristic that may suit its purpose.' And again at the bottom of the same page, 'where a false and unnatural classification has been resorted to that courts will interfere.' "

As a premise to the petitioner's contention here we are asked to take judicial notice of the fact that there are only a very few such banks in Ohio that come within the contemplation of this section, but it is very doubtful to us whether this contention is correct or not. Certain it is not of universal knowledge, for it is doubtful if one man in a hundred or even in a thousand of the population of Ohio has such knowledge. But though it may not be of common knowledge, yet if it is a matter that may be of common knowledge by reason of authorized statistics within the reach of every man who cares to investigate, then it is a matter of which courts will take judicial notice. That does not so clearly appear in this case; yet conceding all that counsel claim for it in that behalf, what is the result? That there are some such banks existing is admitted. That there may be tomorrow, next year or the year after a great many more is also within the contemplation of this statute, and was necessarily and properly within the contemplation of the Legislature at the time it passed this act and, therefore, having conferred privileges in this very banking act it had a right to impose penalties and restrictions and to classify them as a distinct and separate organization, distinguished from other banks and differing from other banks in their relation to the state and to the public at large. The first inquiry is whether or not there is such a class existing in Ohio. The number within that class is to our minds of little or no importance. If there is such a class, that is sufficient for the purposes of this case. If there are banks organized under this particular act, if other banks may be organized

under it, if the privilege of organizing banks thereunder is and has been open to the people of the state, and there is an entire chapter of our laws devoted to the rights, liabilities and obligations of this character of bank and penal statutes in reference to misconduct of officers thereof, how can it be said that such a bank and such officers are not a distinct and separate class of banking institutions?   There are undoubtedly a great many reasons that may be urged why all banking companies in Ohio should be included within the provisions of this section.   In fact, to our minds, there is no valid objection thereto and every argument that presents itself to our consideration is in favor thereof, but we are not the Legislature, and as has been said by the Supreme Court in the 52d Ohio St., at page 99, "that if the Legislature has erred in not including what has been excepted from the operation of the law, it is simply an error of judgment in the exercise of its authority and can not be reviewed by the courts." So that the remedy must be sought in the Legislature itself. In order that a law of a general nature shall have uniform operation throughout the state, it must apply, first, territorially to the entire state; second, to all individuals coming within the class designated by the Legislature.   And the power to make this classification is not only expressly but of necessity lodged in the General Assembly of the state, for there are few laws upon our statute books that necessarily affect every individual, but rather the great majority of our laws applies to individuals of a certain class.

On page 99 of the 52d Ohio St., in the case of *State* v. *Nelson,* Judge Burket, who announced the opinion in that case, says:

"Very few statutes apply equally to every person in the state.   Some apply only to males, some to females, some to minors, some to persons of unsound mind, some to office holders and some to criminals.   As pointed out by Minshall, J., in *Alder* v. *Whitbeck,* 44 Ohio St., 539, such classes are arbitrarily formed by the General Assembly, and 'if the Legislature has erred in not including what has been expected from the operation of the law, it is simply an error of judgment in the exercise of its authority, and can not be reviewed by the courts.'"

Again, on page 100, quoting 70 N. Y., page 351, Judge Burket says:

"And does the validity of a law which is required to be general, and which is general in its terms, depend upon the number of subjects upon which it can operate, or upon the size of a class to which it applies? These questions must be answered in the negative."

We are of the opinion, from the reading of these authorities, that the Legislature has a right to make such classification, and it is only when it appears that the classification attempted by the Legislature is false and unnatural that courts ought to interfere, and if there is doubt in this behalf it must be resolved in favor of the constitutionality of the act. We are, therefore, of the opinion that the act in question does not violate any of the provisions contended for by the petitioner.

But even if we are mistaken about that, if this Section 6 of the amendatory act of April 24, 1879, is unconstitutional, it does not necessarily follow that the petitioner is entitled to a discharge. The original act of March 21, 1851, was passed before the adoption of the Constitution of 1851, and, therefore, at the time of the adoption of such Constitution was a valid and subsisting law of the state of Ohio, and it remained the law of Ohio and is still the law of Ohio, unless it has been repealed by a valid act of the Legislature. This original Section 30 prohibited the acts complained of in this indictment, and but for Section 6 of the amendatory act an indictment could be returned and prosecuted under the original act for the commission of acts therein charged. So that if the contention of the petitioner that this Section 6 of this amendatory act is unconstitutional, then it follows as a corollary that original Section 30 is still in force, having never been repealed by a valid act of the Legislature. We think the question is no longer an open one in Ohio, that where the Legislature have enacted an unconstitutional amendment and in the same act repealed the original constitutional law, that the repealing clause must fall with the attempted amendment, and to all intents and purposes the law

remains the same as if no such amendment had been attempted by the Legislature.

In the case of *State of Ohio, ex rel The Attorney-General,* v. *Hall,* 67 Ohio St., page 303, the Supreme Court in the second paragraph of the syllabus declares, "The repealing section of said act is also void," and on page 306 the court say, and this opinion is rendered by the court: "The amending act of April 30, 1902, including its repealing section, is wholly void, and Section 1240, Revised Statutes, stands as though such amendment had not been attempted." This is but following a long line of decisions in Ohio upon this subject.

In the 66 Ohio St., pages 482 and 483, Judge Shauck announcing the opinion of the court, in the case of *State, ex rel Knisely et al,* v. *Jones et al,* says:

"Applying to the case a doctrine with which the lawyers of the state are quite familiar, the repealing section of the present act is inoperative, unless its provisions for reorganization of the board are valid. The system provided by the former legislation being still in full operation, it should continue, unless by a valid act a system to succeed it has been provided."

In 60 Ohio St., at page 273, *State, ex rel Wilmot et al,* v. *Buckley et al,* the court say:

"The said section being inoperative, the repealing section contained in the same act is also inoperative, and this leaves said Section 2926*b,* as amended April 28, 1890, in force."

In the 48 Ohio St., page 211, the case of *The State, ex rel,* v. *Smith et al,* at page 219, in the opinion of the court we find the following language:

"We see no other valid objection to the law. And as the act itself is invalid, the repealing clause must also be held inoperative, as we can not suppose that the Legislature would have repealed the act creating the board of city improvements, without providing any substitute therefor."

Counsel for petitioner make the contention that, under this doctrine announced in the 48 Ohio State, there would be no reason for reinstating an act, when the old law in all material

respects is just like the new one; that there would be neither sense nor justice in reinstating old Section 30 with its archaic provisions as to paper money after the power to issue it had been taken away. There is, no doubt, much logic in this reasoning, but it does not apply to the principle involved here. The question is not as to the reasons and purposes for reinstating such law, but the principle underlying this question is that the invalid act did not affect the valid one that it attempted to repeal, and the court is not now reinstating this act, but would be simply finding that there was no valid act that effected its repeal and that it remains the law of Ohio, because it has not been repealed by any valid enactment of the repealing power of the state. So that we are not concerned as to the reasons why it should or should not be reinstated, for we are not reinstating it, but merely determining that no law of the state is repealed by an unconstitutional enactment of the Legislature of Ohio purporting to repeal the same. For this reason, even though all the other contentions of counsel for petitioner be correct, the common pleas court has jurisdiction of the cause, and there is a valid constitutional law under which this prosecution is proceeding, and the petitioner is not unlawfully deprived of his liberty, and must be remanded to the custody of the sheriff, and such order is accordingly made at the costs of the petitioner and his exceptions are here noted.